HARRY LANG MANUFACTURING COMPANY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26689, 25640, 25641.  Promulgated December 30, 1952.

*Sidney Gelfand*, for the petitioners.
*Arthur B. White, Esq.*, for the respondent.

---

[5] See Bulletin on Section 722, page 56.

[1] Proceedings of the following petitioners are consolidated herewith : Langwear, Inc., and Lang Industries, Inc.

568

OPINION.

HARRON, *Judge:* The petitioners were organized after December 31, 1939, and they are, therefore, required by section 712 (a)[4] of the I. R. C., to use the invested capital method in computing their credit for excess profits tax purposes. Petitioners seek relief under section 722 (c) (1) and (3) of the I. R. C.[5] Petitioners allege, as qualifying factors, under section 722 (c) (1), the extensive experience, production skill, contacts and established reputation in the trade, of their common

---

[4] SEC. 712. EXCESS PROFITS CREDIT—ALLOWANCE

(a) DOMESTIC CORPORATIONS.—In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. In the case of all other domestic corporations the excess profits credit for any taxable year shall be an amount computed under section 714. (For allowance of excess profits, credit in case of certain reorganizations of corporations, see section 741.)

[5] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income

president and principal stockholder, Harry Lang. Petitioners contend they qualify under section 722 (c) (3) because they secured plant buildings on unusually favorable terms, and acquired machinery that had a tax basis substantially less than market value on date of acquisition. Also, that petitioner, Harry Lang Manufacturing Company, leased some machinery used in its operations.

Respondent denies that petitioners qualify under section 722 (c) (1) or (3), and contends that, even if petitioners are held to qualify under section 722 (c), relief must be denied because petitioners have failed to establish a constructive average base period net income within the framework of section 722 (a).

In order to secure relief under section 722 (c), a taxpayer must not only prove that it is qualified for relief under one of the provisions of such subsection, but must also establish a fair and just amount representing normal earnings, for use as a constructive average base period net income, within the requirements of section 722 (a).[6] Establishment of one of the factors without the other is ineffectual for obtaining relief. *Crowncraft, Inc.*, 16 T. C. 690, 695, 696; *Tin Processing Corporation*, 16 T. C. 713, 722; *Danco Co.*, 14 T. C. 276, 282.

We need not decide the question of whether the petitioners qualify under section 722 (c) (1) or (3), for, even if we assume the existence of qualifying factors, the petitioners have failed to demonstrate that they are entitled to relief within the framework of section 722 (a).

pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

(1) the business of the taxpayer is of a class in which intangible assets not includible in invested capital under section 718 make important contributions to income.

\* \* \* \* \* \* \*

(3) the invested capital of the taxpayer is abnormally low. In such case for the purposes of this subchapter, such taxpayer shall be considered to be entitled to use the excess profits credit based on income, using the constructive average base period net income determined under subsection (a). For the purposes of section 713 (g) and section 743, the beginning of the taxpayer's first taxable year under this subchapter shall be considered to be that date after which capital additions and capital reductions were not taken into account for the purposes of this subsection.

[6] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in the cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

Petitioners, throughout the taxable year, were engaged exclusively in war work producing military coveralls or fatigue uniforms under Government contracts. Petitioners performed what is called by the trade "contract work," a cut, make and trim operation, with the cloth furnished by the Government. Plants were located in Iowa, Minnesota, and Wisconsin.

Petitioners, in their reconstruction of normal earnings for the base period, make the assumption that they could have secured a volume of business in the base period years equal to at least 75 per cent of that realized in the taxable year 1944. They, then, make additional assumptions about the amount of direct labor cost, and normal profit to be realized, which is expressed as a percentage of direct labor cost, or as a rate per dozen of garments produced. The petitioners' reconstructions are based on the actual production levels achieved during the taxable year 1944 when the volume of production was the result of war time demand and production capacity was under the strain of war time contracts.

While any relief under section 722 must be based upon assumptions, due to the very nature of the relief afforded, it is incumbent upon the party seeking relief to establish some basis within the framework of section 722 (a) upon which the assumptions can be grounded. *Crowncraft, Inc., supra*, p. 696. In the instant case the petitioners have failed to show that they could have secured, in the base period, the volume of business necessary to support any reconstruction of earnings, even their proposed reconstruction, and that they could have operated at a profit.

A constructive average base period net income must be computed on the basis of an operation of the same type and character as that conducted in the taxable year. *Tin Processing Corporation, supra*, pp. 723, 724. In the taxable year 1944, the petitioners performed only "contract work," and they have offered no evidence showing the volume of "contract work" performed, or available, during the base period years in the garment industry subgroup in which their products fall.[7] There is no basis in the record for assuming that the petitioners could have successfully entered the market during the base period years and obtained the volume of work necessary to remain in business, as well as to realize the earnings which they now seek to establish as reconstructed base period earnings. Figures from the *Census of Manufacturers—1939*, indicate that, even considering a broader category of products, in the year 1939 for example, only a nominal amount of "contract work" was performed in the industry subgroup in which petitioners' products fall, in the United States as a whole,

---

[7] It would not help petitioners' case if they were permitted to reconstruct on the basis of a complete garment operation. Lang's companies in the base period, operating on a complete garment basis, failed to realize a profit.

and that in the three states in which petitioners operate, the volume of "contract work" was negligible.

In contrast, net sales by the petitioners after renegotiation, for the taxable year ending June 30, 1944, were substantial, exceeding a million dollars.

It is apparent from the record that only after the occurrence of the war emergency, did "contract work" in any substantial volume become available in the areas in which petitioners operated, and this new demand was created by heavy Government buying. All of petitioners' sales in the taxable year were under Government contract.

Petitioners argue that because of the quality of their product, had they been in operation during the base period years, they could have secured a substantial volume of business from large chain or wholesale organizations with national outlets, citing specifically Butler Brothers, Montgomery Ward & Co., Sears Roebuck & Co., and J. C. Penney Co.

The evidence provides no foundation for petitioners' argument. In fact, the testimony of petitioners' witnesses serves to establish that, during the period 1936–39, the national chain companies mentioned above were either not purchasing any garments of the kind in question on a "contract work" basis, or were purchasing the bulk of their requirements from southern operators who could produce, profitably, at a lower cost than the northern firms, due principally to the prevailing differences in wage rates between the areas.

It is apparent that had petitioners been in operation during the base period they would have been at a competitive disadvantage with southern firms whose wage scales were lower. Lang admitted that the higher labor costs of the north could not be overcome by the use of the production methods employed by petitioners. This competitive disadvantage is significant in view of the fact that a manufacturer in the garment industry, operating on a "contract work" basis is primarily a contractor of labor. Petitioners have offered no evidence of the experience of other companies during the base period years. We have therefore no basis for assuming that, had petitioners been in operation during the base period, they would have been financially successful. In fact, the evidence all tends towards a contrary conclusion.

On the evidence before us, the petitioners have failed to establish what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income as required by section 722 (a). Cf. *Danco Co.*, *supra*. Accordingly, the petitioners' claims for relief must be denied.

In view of the conclusion reached, it is not necessary for us to resolve other questions of law or fact raised by the parties.

Reviewed by the Special Division.

*Decisions will be entered for the respondent.*